UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LAMONT PARSON, | ) | Case No.  1:07 CV 2669 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | MEMORANDUM OPINION |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | Magistrate Judge James S. Gallas |
| | ) | |

Lamont Parson filed this appeal seeking judicial reversal under 42 U.S.C. §405 (g) and §1383(c)(3) from the administrative denial of disability insurance benefits and supplemental security income.  At issue is the ALJ's decision dated February 10, 2006, which stands as the final decision of the Commissioner.  See 20 C.F.R. §404.1481, §416.981.  The parties consented to the jurisdiction of the Magistrate Judge for all further proceedings including entry of judgment in accordance with 28 U.S.C. §636(c) and Rule 73 of the Federal Rules of Civil Procedure.  Parson challenges the denial of benefits framing his issue as whether it was error for the ALJ to find that Parson is capable of light work activity when the limitations resulting from his severe impairments were not fully and fairly evaluated. As this issue indicates, Parson was determined to be capable of a partial range of light work and based on vocational expert testimony, the ALJ found that Parson could perform substantial  gainful activity as a press operator or bench inspector (Tr. 21-23).  Also based on the vocational expert's testimony, the ALJ concluded that Parson could no longer perform any of his

1:07 CV 2669                                    2

past relevant work as a bill collector (light), delivery driver (very heavy), industrial cleaner

(medium) or airplane washer (medium). (Tr. 21, 437).[1]


However, Parson's argument is focused on two narrow aspects of the ALJ's determination,

the lack of consideration of dyspnea on exertion and narcolepsy.  Parson claims that he falls asleep

uncontrollably and that he lost his last job in 1999 because of this problem. The ALJ, however,

stated that the evidence showed only that Parson uses oxygen and a CPAP machine at night to treat

obstructive sleep apnea. (Tr. 20). There is no polysomnography or neurological study to support this

alleged impairment of narcolepsy. There is  Parson's testimony that he had been diagnosed with

narcolepsy two or three years before the hearing. (Tr. 17). The ALJ noted that the Huron Hospital

medical clinic diagnosed narcolepsy and obstructive sleep apnea on September 2, 2003. ( Tr. 19,

242).  Parson was scheduled for a sleep study for apnea and a EEG to rule out narcolepsy. The ALJ

pointed out that there is no evidence that the sleep study was performed. (Tr. 19).


The ALJ did not address the problem of dyspnea (dizziness) on exertion. On two consultative

examinations, Dr. Berger noted in the April 1999 report that Parson was slightly dyspneic with effort

(Tr. 165). In the December 2003 report, Dr. Berger noted that Parson was moderately dyspneic with

effort (Tr. 224). The doctor did not include this problem in the diagnoses. Rather, Dr. Berger stated,

"On the basis of the objective examination, his complaints of dyspnea with minimal effort would

be an adverse factor although he had worked in a job that required excessive degree of physical

---

[1]  The ALJ noted also that Parson had worked as a "pimp." (Tr. 19). Consultative psychologist Dr. Pickholtz reported that Parson served one year in prison for "selling sex through prostitutes." (Tr. 207). Needless to say, this occupation was not discussed during the vocational testimony at the administrative hearing.

1:07 CV 2669                                        3

exertion such as moving." (Tr. 165). The ALJ reported Dr. Berger's findings except in regard to

dyspnea (Tr. 19).


State agency physicians reviewed the evidence, including Dr. Berger's reports, and

concluded that Parson was limited to light exertion due to asthma, falling asleep with lifting 50 lbs.,

expiratory wheezing, frequent coughing, weight 396 lbs., and pulmonary function studies. (Tr. 245).

They did not address Dr. Berger's findings concerning dyspnea on exertion.


*Standard of Review:*

"This court must affirm the Commissioner's conclusions absent a determination that the

Commissioner has failed to apply the correct legal standards or has made findings of fact

unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec*., 127 F.3d 525,

528 (6th Cir.1997). The issue before this court must be resolved under the standard whether there

is substantial evidence in the record to support the Commissioner's decision.  Substantial evidence

is evidence that a reasonable mind would accept as adequate to support the challenged conclusion.

*Casey v. Secretary of Health & Human Services*,  987 F.2d 1230, 1233 (6th Cir. 1993);  *Wyatt v.

Secretary*, 974 F.2d 680, 683 (6th Cir. 1992); *Born v. Secretary*, 923 F.2d 1168, 1173 (6th Cir.

1990); and see *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (court may "not inquire whether

the record could support a decision the other way").

1:07 CV 2669                                          4

      With regard to alleged narcolepsy, the ALJ had substantial evidence. Parson is referred to 20 C.F.R. §404.1508, §404.1512(c), and their SSI counterparts, §416.908 and §416.912(c). An impairment "must be established by medical evidence consisting of signs, symptoms and laboratory findings, not only by your statements of symptoms." §§404.1508, 416.908. Also it is Parson's responsibility to provide medical evidence showing that he has the impairment. §§404.1512(c), 416.912(c). The ALJ simply relied on Parson's failure to substantiate the diagnosis of narcolepsy with laboratory findings. In effect the ALJ made a negative inference from Parson's failure to produce the sleep study and EEG results mentioned in the September 2003 hospital report.

      With regard to dyspnea on exertion, the ALJ simply failed to address this limitation, and it was not included in the reasons the state agency physicians ascribed to their residual functional capacity assessment for light work, which the ALJ adopted in the determination. (Tr. 20). Dyspnea on exertion appears to be an additional limitation which was neglected at the administrative hearing by both sides, and discovered by Parson after the ALJ's decision. Whether it has any impact on the jobs identified by the vocational expert is something that has yet to be ascertained.

      Parson had established that he cannot perform his past relevant work. Consequently, the burden had shifted onto the Commissioner to demonstrate the existence of types of employment compatible with the individual's disability. See *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980); *Cole v. Secretary*, 820 F.2d 768, 771 (6th Cir. 1987); *Abbott v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391-92 (6th Cir. 1999). Dr. Berger believed dyspnea was a significant vocationally limiting factor, and this should have been resolved by the

1:07 CV 2669                                   5

ALJ. Had it been included by the state agency physicians then this court would have a basis for finding this error to be harmless. However, it now stands as an unresolved issue with potential affect on the ability to perform substantial gainful activity. It is the Commissioner's responsibility to interpret Dr. Berger's ambiguous statement regarding dyspnea. See *Sims v. Apfel,* 530 U.S. 103, 109, 120 S.Ct. 2080, 2084, 147 L.Ed.2d 80 (2000)(quoting *Hormel v. Helvering*, 312 U.S. 552, 61 S.Ct. 719, 85 L.Ed. 1037 (1941)). A district court cannot assess questions of fact in the first instance and this court is limited to the question whether there is substantial evidence to support such findings. *Myers v. Richardson* , 471 F.2d 1265, 1267 (C.A.1972); *Dolbashian v. Secretary*, 688 F.2d 4, 7 (1st Cir. 1982). To resolve Dr. Berger's comments would place the court in the improper role of the fact-finder. *Torres v. Secretary*, 475 F.2d 466, 469 (1st Cir. 1973); *Lewis v. Califano*, 574 F.2d 452, 456 (8th Cir. 1978).

        In this circuit, the Commissioner's decision may be reversed and benefits awarded only when the Commissioner's decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking. *Newkirk v. Shalala*, 25 F.3d 316 (6th Cir. 1994); *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994); *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985); and see *Lashley v. Secretary*, 708 F.2d 1049 (6th Cir. 1983). Proof of disability is not strong. Further, whether there is objective support for dyspnea is questionable. Accordingly remand under the fourth sentence of 42 U.S. C. §405(g) is necessary.

1:07 CV 2669                                    6

### *CONCLUSION*

For the foregoing reasons based on the arguments presented, the record in this matter and applicable law, the undersigned finds that the Commissioner's decision denying disability insurance benefits and supplemental security income benefits is not supported by substantial evidence due to the unresolved questions surrounding the effect of dyspnea on exertion as noted by Dr. Berger. Accordingly, the denial of disability insurance benefits and supplemental security income must be remanded under the fourth sentence of 42 U.S.C. §405(g) for evaluation of Parson's residual functional capacity to include consideration of Dr. Berger's reports and his comments of dyspnea on exertion. The Commissioner will evaluate Dr. Berger's opinion under the standards applicable to opinions from consultative physicians.

_____s/James S. Gallas_____
United States Magistrate Judge

Dated: March 13, 2009